# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| In re: | : | Case No. 16-58202 |
| | : | |
| Iddings Trucking, Inc., | : | Chapter 11 |
| | : | |
| Debtor. | : | Judge Preston |

### EMERGENCY MOTION OF DEBTOR (1) TO AUTHORIZE USE OF CASH COLLATERAL, (2) TO PROVIDE ADEQUATE PROTECTION TO SECURED CREDITORS AND (3) TO ENTER INTO SECURED POST-PETITION FINANCING WITH CRESTMARK BANK AND REQUEST FOR EXPEDITED HEARING

Now comes Iddings Trucking, Inc., the Debtor and Debtor-in-Possession (the "Debtor"), and moves the Court (the "Motion") pursuant to 11 U.S.C. §§361, 362, 363, 364 and 507(b), Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure, and Local Bankruptcy Rule 4001-2 for entry and approval of an Order authorizing the use of cash collateral of Crestmark Bank (the "Bank") and/or the Internal Revenue Service ("IRS") and authorizing Debtor further to obtain secured credit from and providing adequate protection to the Bank. As a result of the Debtor seeking an expedited hearing on this matter, no 21-day notice is attached. A Memorandum in Support follows.

Respectfully submitted,

  /s/  John W. Kennedy
Myron N. Terlecky (0018628)
John W. Kennedy (0042672)
Strip, Hoppers, Leithart, McGrath & Terlecky Co., LPA
575 South Third Street
Columbus, Ohio 43215-5759
Telephone: (614) 228-6345
Facsimile: (614) 228-6369
Email: mnt@columbuslawyer.net
Attorneys for Iddings Truckng, Inc.,
Debtor and Debtor-in-Possession

1

<u>**MEMORANUM IN SUPPORT**</u>

**I.      BACKGROUND INFORMATION**

1.      On December 30, 2016 (the "Petition Date"), the Debtor commenced this case by filing a voluntary petition under Chapter 11 of the Bankruptcy Code.

2.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b)(1) and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).  Venue of this proceeding is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409 because the Debtor's assets and principal place of business are located in this District.

3.      Pursuant to 11 U.S.C. §§ 1107(a) and 1108, the Debtor is operating its business and managing its affairs as debtor in possession. No trustee, examiner or statutory committee has been appointed in this case.

4.      The Debtor is in the business of commercial trucking.  Its principal place of business is located at 741 Blue Knob Road, Marietta, Ohio 45750.  The Debtor has been in business for more than 50 years as it was founded in 1966.  The Debtor currently employs approximately 32 individuals.

5.      The Debtor began experiencing financial trouble in 2008 with the national financial downturn.  To stay in business and to inject much-needed capital, the Debtor entered into a Loan and Security Agreement with the Bank.  Copies of the loan and security documents are attached hereto as Exhibit A.

6.      As of the Petition Date, Debtor owes approximately $175,000.00 to the Bank, exclusive of fees and other charges.

7.      The IRS filed Federal Tax Liens against the Debtor on July 15, 2016 and on

December 16, 2016.  Copies of the tax liens are attached hereto as Exhibit B.  The tax liens assert

that Debtor owes the IRS approximately $369,000.00 in federal taxes.

8.      The Debtor filed this Chapter 11 proceeding in order to reorganize its financial

affairs, to preserve the going concern value of its assets, and to provide a substantive and

procedural mechanism for the realization of that value, so as to maximize the value of its assets

for the benefit of all parties in interest.

9.      As a result of the pre-petition loan with the Bank and the Federal Tax Liens, all

cash in the Debtor's possession or in which the Debtor has an interest on and after the Petition

Date constitutes cash collateral (the "Cash Collateral") in which the Bank and/or the IRS asserts

an interest within the meaning of 11 U.S.C. §363(a).

10.     By this Motion, pursuant to 11 U.S.C. §§105, 361, 362, 363 and 364, Bankruptcy

Rules 2002, 4001 and 9014, and LBR 4001-2, the Debtor requests that this Court enter an order

(i) authorizing the Debtor's use of Cash Collateral, (ii) approving adequate protection to the

Bank, (iii) authorizing secured post-petition financing with the Bank, and (iv) scheduling a final

hearing (the "Final Hearing") for this Court to consider entry of a final order authorizing and

approving the relief requested in this Motion.

## II.    BASIS FOR RELIEF

11.     The Debtor seeks authority from this Court in accordance with 11 U.S.C. §

363(c)(2) to use the income generated from its operations which is subject to the security interest

of the Bank.  The Debtor seeks to use cash collateral to make adequate protection payments to

the Bank and/or IRS, to pay the obligations owed to the Bank and/or IRS and to pay its ordinary-

course post-petition operating expenses.

12.     The Debtor will suffer immediate and irreparable harm if not authorized to use

cash collateral or obtain purchase order financing.   It is important for the Debtor to be able to use the income generated from its operations which is subject to the security interests of the Bank and/or IRS to continue its operations, maintain its customer base, pay operating obligations, pay adequate protection payments and protect the value of the Debtor's operations.

13.     The Debtor intends to provide adequate protection to the Bank and/or IRS for the use of the Cash Collateral by offering to maintain the going concern value of the collateral by using the Cash Collateral to continue to operate the business and by providing post-petition replacement liens pursuant to 11 U.S.C. §361(2) in accounts receivable.  The priority of any such post-petition replacement liens shall be the same as existed as of the Petition Date.

14.     The continuation of the Debtor's operations likely presents the best opportunity for the Bank, the IRS and other creditors to receive the greatest recovery on account of their claims.  Accordingly, the use of the Cash Collateral will allow the Debtor to continue operations and thereby protect the creditors' interests.   Courts have consistently recognized that the preservation of the value of secured lenders' collateral constitutes adequate protection of such creditors' interest in the collateral.  *See*, *In re Pursuit Athletic Footwear, Inc.*, 193 B.R. 713, 716 (Bankr. D. Del. 1996) (if there is no actual diminution of value of collateral and the debtor can operate profitably post-petition, then the secured creditor is adequately protected); *In re Willowood E. Apartments of Indianapolis II, Ltd.*, 114 B.R. 138, 143 (Bankr. S.D. Ohio 1990) (interest is collateral is adequately protected when cash collateral applied to normal operating and maintenance expenditures on the collateral property).

15.     Concurrently with this Motion, Debtor is requesting an expedited hearing to consider the use of Cash Collateral.  An immediate need exists for the Debtor to obtain approval of the use of Cash Collateral in order to meet key expenses such as payroll in the approximate

semi-monthly amount of $43,000.00, to pay utilities, insurance, and taxes and to pay independent contractors.  Without the immediate use of Cash Collateral, the Debtor will essentially be forced to shut down, precluding any possibility of preserving the value of the business, generating new value and successfully reorganizing.

16.     Pursuant to Bankruptcy Rule 4001, the Debtor requests that this Court set a preliminary hearing on the use of Cash Collateral, and that at such preliminary hearing the Court authorize the temporary use of Cash Collateral in order to prevent immediate and irreparable harm to Debtor pending a final hearing.  The Debtor further requests a final hearing as soon as the Court's schedule permits.

Based upon the foregoing, it is respectfully requested that the Court enter an Order granting the Motion and that the Court grant such other and further relief as is appropriate.

Respectfully submitted,


  /s/  John W. Kennedy
Myron N. Terlecky (0018628)
John W. Kennedy (0042672)
Strip, Hoppers, Leithart, McGrath & Terlecky Co., LPA
575 South Third Street
Columbus, Ohio 43215-5759
Telephone: (614) 228-6345
Facsimile: (614) 228-6369
Email: mnt@columbuslawyer.net
Attorneys for Iddings Truckng, Inc.,
Debtor and Debtor-in-Possession

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing EMERGENCY MOTION OF DEBTOR (1) TO AUTHORIZE USE OF CASH COLLATERAL, (2) TO PROVIDE ADEQUATE PROTECTION TO SECURED CREDITORS AND (3) TO ENTER INTO SECURED POST-PETITION FINANCING WITH CRESTMARK BANK AND REQUEST FOR EXPEDITED HEARING was served (i) **electronically** on the date of filing through the court's ECF system on all ECF participants registered in the case at the email addresses registered with the court, and (ii) by **ordinary U.S. Mail** on December 30, 2016 addressed to the Debtor, the Office of the United States Trustee, the twenty largest unsecured creditors, all secured creditors and those other parties set forth on the attached mailing matrix.


 /s/ John W. Kennedy
John W. Kennedy  (0042672)

IDDINGS TRUCKING INC
741 BLUE KNOB RD
MARIETTA OH  45750

OFFICE OF THE U S TRUSTEE
170 N HIGH ST #200
COLUMBUS OH  43215

ENGS
2441 WARRENSVILLE RD #310
LISLE IL  60532

BEERY & SPURLOCK CO LPA
ATTN  MIKE SPURLOCK
275 EAST STATE ST
COLUMBUS OH  43215

RON CAIN
4525 LIGHTNER RIDGE RD
STOCKPORT OH  43787

BROWER INSURANCE AGENCY LLC
P O BOX 37
DAYTON OH  45401

OHIO DEPARTMENT OF TAXATION
ATTN BANKRUPTCY DIVISION
P O BOX 530
COLUMBUS OH  43266-0030

PARAGON TANK TRAILER SALES
400 E WISCONSIN ST #300
MILWAUKEE WI  53202

WESTFIELD BANK FSB
P O BOX 551
MEDINA OH  44258

L AND T
3420 SCIOTANGY RD
COLUMBUS OH  43221

OHIO BUREAU OF WORKERS'
COMPENSATION
LAW SECTION BANKRUPTCY UNIT
P O BOX 15567
COLUMBUS OH  43215-0567

OHIO DEPT OF JOB &
FAMILY SERVICES
OFFICE OF LEGAL SERVICES
30 E BROAD ST 31ST FLOOR
COLUMBUS OH  43218-2404

UNITED HEALTHCARE
185 ASYLUM ST
BURLINGTON CT  06013-3408

MLW
7864 SPRINGS MILLS DR
CANAL WINCHESTER OH  43110

AGCS MARINE INSURANCE CO
P O BOX 0522
CAROL STREAM IL  60132

UNIFIRST CORPORATION
3 PROGRESS WAY
CLARKSBURG WV  26301

HILL IDEALEASE LLC
P O BOX 218
MARTINS FERRY OH  43935

TOM BROWN
43890 VERNON HUGHES RD
CALDWELL OH  43724

VISA
P O BOX 15153
WILMINGTON DE  19886

MILLER'S AM/PM LLC
2889 ST RTE 821
MARIETTA OH  45750

BRENDA WALDRON
1874 MASONIC OAK RD
MARIETTA OH  45750

LINCOLN FINANCIAL GROUP
P O BOX 7247-0439
PHILADELPHIA PA  19170

ALICO EQUIPMENT FINANCE
W222  N833 CHEANEY DR
WAUKESHA WI  53186

ASCENTIUM CAPITAL LLC
23970 HWY 59 N
KINGWOOD TX  77339

ATTORNEY GENERAL
REVENUE RECOVERY
SECTION/BANKRUPTCY
150 E GAY ST 21ST FLOOR
COLUMBUS OH  43215

CELTIC CAPITAL
23622 CALABASAS RD #323
CALABASAS CA  91302

CRESTMARK BANK
5480 CORPORATE DR
TROY MI  48098

CIT BANK
10201 CENTURION PKWY #100
JACKSONVILLE FL  32256

CITIZENS BANK
501 FIFTH ST
BEVERLY OH  45715

DE LAGE LANDEN FINANCIAL
SERVICES INC
P O BOX 41602
PHILADELPHIA PA  19101

FIRST NEIGHBORHOOD BANK
4416 EMERSON AVE
PARKERSBURG WV  26104

HIGHWAY COMMERCIAL SERVICES
1250 WALCUTT RD
COLUMBUS OH  43228

HUNTINGTON NATIONAL BANK
P O BOX 182834
COLUMBUS OH  43218

INTERNAL REVENUE SERVICE
CENTRALIZED INSOLVENCY
OPERATIONS
P O BOX 7346
PHILADELPHIA PA  19101-7346

M2 LEASE FUNDS LLC
175 N PATRICK BLVD #140
BROOKFIELD WI  53045

OHIO ATTORNEY GENERAL
COLLECTIONS ENFORCEMENT SECTION
150 E GAY ST 21ST FLOOR
COLUMBUS OH  43215-3191

PEOPLE'S UNITED GLOBAL
FINANCIAL SERVICES
P O BOX 317887
BRATTLEBORO VT  05302

SALLY J WALTERS
4250 ST RTE 26
MARIETTA OH  45750

SETTLERS BANK
115 3RD ST
MARIETTA OH  45750

SIEMENS FINANCIAL SERVICES
301 LINWOOD DR #215
MALVERN PA  19355

THOMAS E COUGHLIN
27777 FRANKLIN RD #2500
SOUTHFIELD MI  48034

TRANS LEASE INC
P O BOX 172686
DENVER CO  80217

U S ATTORNEY
303 MARCONI BLVD #200
COLUMBUS OH  43215-2326

U S ATTORNEY GENERAL
MAIN JUSTICE BLDG RM 5111
10TH & CONSTITUTION AVE N W
WASHINGTON DC  20530-0001

EXHIBIT A

COPY

## AMENDED AND RESTATED
## DEMAND PROMISSORY NOTE

**Principal Amount $2,900,000.00**

**Due: On Demand**

**Dated: January 12, 2009**
**Amended and Restated: October 25, 2012**
**Amended and Restated: October 6, 2014**

This Demand Promissory Note ("Note") is made by the Borrower who has signed this Note. The Borrower promises to pay to the order of **CRESTMARK BANK**, ("Crestmark"), on Demand, at its offices located at 800 Crescent Centre Drive, Suite 620, Franklin, Tennessee 37067 or at such other place as Crestmark or the person that then holds this Note designates in writing, the principal amount set forth above or such lesser or greater amount as may then be due. In addition to the principal amount, the Borrower must also pay interest, fees and expenses. All payments that are made must be made in lawful money of the United States of American in immediately available funds. Borrower does not have any right to offset, deduct, or counterclaim from the amount due.

This Note is one of the Loan Documents described in a Loan and Security Agreement ("Loan Agreement") dated January 12, 2009, as amended by Amendment No. 1 to Schedule to Loan and Security Agreement dated October 25, 2012, as amended by Amendment No. 2 to Schedule to Loan and Security Agreement of even date herewith between Borrower and Crestmark. Any capitalized terms used in this Note, if not specifically defined in this Note, will have the meanings set forth in the Loan Agreement.

Interest will be charged on this Note on a year of 360 days with interest being charged for each day the principal amount is outstanding including the date of actual payment. The interest rate will be a rate which is equal to one percent (1.00%) percentage points in excess of that rate shown in the Wall Street Journal as the prime rate (the "Effective Rate"). Interest on this Note will change with each change in the prime rate so published. If at any time Crestmark either abandons the use of the Wall Street Journal prime rate or the Wall Street Journal prime rate is no longer published, then Crestmark will establish a similar replacement rate in its sole discretion. Notwithstanding the foregoing, at no time will the Effective Rate be less than four and sixty-five one hundredths of one (4.65%) percent per annum.

Borrower must pay interest on the principal amount which is outstanding each month in arrears commencing on the first day of the month following the funding of the transaction, and continuing on the first day of each month thereafter until Demand or until the Debt is fully paid. If the Loan Agreement so provides, interest will also be payable at the same rate on all other sums constituting the Debt. If any payment is due on a day which Crestmark is not open for business, then payments will be made on the next business day. Payments will be applied in the manner provided in the Loan Agreement.

Should Borrower make any payment by mail, the payment must be actually received by Crestmark before the payment is credited. Borrower assumes all risk resulting from non-delivery or delay, in delivery of any payment no matter how the payment is delivered.

If Borrower elects to prepay this Note and/or terminate the Agreement, Borrower may do so, but only upon payment of all the Obligations, including the Exit Fee set forth in the Schedule.

It is the intent of the parties that the rate of interest and other charges to Borrower under this Note shall be lawful; therefore, if for any reason the interest or other charges payable hereunder are found by a court of competent jurisdiction, in a final determination, to exceed the limit Crestmark may lawfully charge Borrower, then the obligation to pay interest or other charges shall automatically be reduced to such limit and, if any amount in excess

of such limit shall have been paid, then such amount shall be credited to the outstanding principal balance of this Note, or if no such amount is outstanding, refunded to Borrower.

Borrower waives any obligation of Crestmark to present this Note for payment or to give any notice of nonpayment or notice of protest and any other notices of any kind. The liability of the Borrower is absolute and unconditional, without regard to the liability of any other party.

This Note amends and restates in its entirety a certain Promissory Note (Line of Credit) dated January 12, 2009, from Borrower to Crestmark. This Note does not constitute a novation or extinguishment of the existing indebtedness evidenced by said promissory note and said indebtedness is still outstanding.

**BORROWER:**

Iddings Trucking, Inc.
741 Blue Knob Road
Marietta, OH 45750


By: George C..Loeber
President

2

## LOAN AND SECURITY AGREEMENT
### ("Agreement")

This document dated January 12, 2009, is an agreement between **CRESTMARK BANK**, a Michigan banking corporation ("Crestmark"), and Iddings Trucking, Inc., an Ohio corporation ("Borrower"). In this Agreement, Crestmark and the Borrower are collectively the "Parties". Any person who guaranties the obligations of Borrower (each a "Guarantor") is required to sign this Agreement. The Parties have the addresses shown on the Schedule which is attached to this Agreement. These are the addresses of the Parties for all purposes and may be changed by one party giving notice to the other party in writing of the new address.

1.  **PURPOSE.** The purpose of this Agreement is to set out the terms for the loan from Crestmark to the Borrower detailed in the Schedule ("Loan"). The Schedule is part of this Agreement. The note to be signed by the Borrower, any guaranty(s), and any other documents now or hereafter signed by any of the Parties in connection with this Agreement, the Loan or any document issued by Crestmark or the bank holding the lockbox ("Lockbox Bank") are also all part of this Agreement. All of the documents together are referred to collectively as the "Loan Documents".

2.  **DISCRETION.** Whether Crestmark makes an advance to or for Borrower's benefit under the Loan Documents is in Crestmark's sole discretion. Any disbursement of money or advance of credit by Crestmark, including but not limited to amounts advanced for the payment of interest, fees, expenses and amounts necessary to protect, maintain and preserve Crestmark's Collateral under the Loan Documents ("Protective Disbursements"), is referred to collectively as an "Advance". If an Advance is made, it will be made in accordance with the Advance Formula described in this Agreement and detailed in the Schedule. Crestmark may choose to make Protective Disbursement in excess of the Maximum Amount or Advance Formula (each as hereafter defined) in its sole discretion. Each time Crestmark makes an "Advance", including a "Protective Disbursement", the Advance will be debited against an account in the Borrower's name on Crestmark's books ("Loan Account"), and each payment will be credited against the Loan Account in the manner described in this Agreement.

3.  **BORROWER'S OBLIGATIONS; LOAN.**

    A.  The Borrower must repay all Advances with respect to the Loan with interest, which is due monthly as specified in the note, along with all other fees and expenses of Crestmark set forth herein or in the Schedule. The Borrower must also comply with its representations, promises, covenants and reporting requirements set forth in this Agreement, in the Schedule and in the other Loan Documents. Borrower's failure to do any of the foregoing is known as a Default.

    B.  The total amount Borrower owes to Crestmark will be the aggregate of the Advances made by Crestmark, including Protective Disbursements, the expenses and fees shown on the Schedule, any and all costs incurred by Crestmark (including its actual attorney's fees), and interest at the rate shown in the note on all amounts Advanced. All of these amounts together are referred to as the "Indebtedness".

    C.  Borrower understands that the entire Indebtedness is repayable on the demand of Crestmark.

    D.  The interest rate may be changed to the Extra Rate described in the note in Crestmark's discretion if the Borrower is in Default or if the Borrower fails to pay the Indebtedness on demand.

    E.  The total Indebtedness will not, at any time, exceed the maximum amount set forth on the Schedule ("Maximum Amount"), and the Borrower understands that if at any time it should owe more to Crestmark than the Maximum Amount it must repay that amount immediately, whether or not demand to repay the whole of the Indebtedness has been made. Further, Protective Disbursements must be immediately repaid whether or not the Maximum Amount has been exceeded.

    F.  Advances with respect to the Loan may be measured against a percentage of Eligible Accounts, Eligible Inventory and/or a Borrowing Base typically based on a value attributed to equipment or real estate ("Advance Formula") depending on the agreement of the Parties as reflected in the Schedule. The percentage and the definition of which accounts or inventory are "Eligible" are found in the Schedule. If applicable, the Borrowing Base will also be stated in the Schedule. The Indebtedness may not exceed the lesser of the Maximum Amount or

the Advance Formula. There may be availability for an Advance ("Availability") as long as the then outstanding Indebtedness is less than the lower of the Maximum Amount or the Advance Formula.

### 4.   SECURITY INTEREST.

   **A.**   Before Crestmark makes any Advance to the Borrower, the Borrower must give Crestmark security for repayment of the Indebtedness. This security is known as a "Security Interest". Borrower, by signing this Agreement, grants to Crestmark a Security Interest in all of its accounts, goods, inventory, equipment, chattel paper, instruments, investment property, specifically identified commercial tort claims, documents, deposit accounts, letter of credit rights, general intangibles and supporting obligations EXCLUDING ALL TITLED VEHICLES for any of the foregoing (the "Collateral"), to secure repayment of the Indebtedness. The Collateral also includes all monies on deposit with Crestmark, or on deposit in the Lockbox Account which is described later. If any of the foregoing is at any time disposed of or sold, Crestmark also has a Security Interest in all of the proceeds of any of the foregoing.

   **B.**   Crestmark has the right to perfect its Security Interest by filing what is known as a financing statement or by taking possession of certain Collateral. In connection with the Security Interest, Borrower gives Crestmark all of the rights of a secured creditor under the Uniform Commercial Code (the "UCC"). All expenses of Crestmark relating to the Security Interest are part of the Indebtedness.

   **C.**   In connection with the Security Interest, Borrower must notify all persons who owe it on account ("Account Debtor") of the Crestmark Security Interest on a form approved by Crestmark and all Account Debtors must be instructed to make all payments on the account, whether by credit cards, check or electronic transfer, to the Lockbox Account, or as instructed by Crestmark in its sole discretion.

   **D.**   The Security Interest gives Crestmark rights with respect to the Collateral and the Security Interest and this Agreement imposes duties upon the Borrower which relate to the Collateral. Some of the rights and duties are: (i) the right of Crestmark at any time to notify any persons who may hold any part of the Collateral, such as Account Debtors, of Crestmark's Security Interest. Borrower should understand that Crestmark will verify accounts with the Account Debtors; (ii) the Borrower must cooperate with Crestmark in obtaining control of any Collateral in the possession of third persons, particularly Collateral consisting of deposit accounts, investment property, letter of credit rights or other collateral which is evidenced by electronic entries; (iii) except for the right of Borrower to sell its inventory in the ordinary course of business, the Borrower agrees not to sell or transfer any of its Collateral or grant any other Security Interest in the Collateral, except as Crestmark may specifically agree to in writing. Borrower remains liable to perform all of its obligations with respect to the Collateral such as the recognition of any warranties in inventory sold and Crestmark is under no responsibility to perform any of the obligations of the Borrower; and (iv) Borrower must notify Crestmark immediately if it knows that any Account Debtor disputes an account.

### 5.   LOAN ADVANCES.

   **A.**   Advances with respect to the Loan are always discretionary with Crestmark.   In connection with any request for an Advance, if the request is based upon specific Eligible Accounts, the Borrower must also furnish to Crestmark at the same time invoices, credit memos, purchase orders, evidence of delivery, proof of shipment, timesheets or any other documents Crestmark requests, in its sole discretion, with respect to the accounts that Borrower is tendering to Crestmark to support the Advance ("Account Documents"). At the request of Crestmark Borrower will provide a Borrowing Certificate in form approved by Crestmark before the Advance is made. Crestmark will endeavor to provide the requested funds by 4:00 p.m. Eastern Standard Time on the date that it receives the request so long as the complete package of information for the request has been received by 10:00 a.m. All requests for funding will be subject to Crestmark's then standard fees for electronic funds transfer, wire transfers and check services.

   **B.**   All documents related to the accounts must be marked by Borrower to show assignment to Crestmark and the Borrower must notify each Account Debtor by mail, in accordance with a form approved by Crestmark that the account has been assigned to Crestmark and that all payments on the account whether made by mail or electronically or otherwise must be made payable to the Borrower at the address provided in the letter, which is the Lockbox Account. The address for payments will be the Lockbox Bank specified in the Schedule. All expenses for notification of each Account Debtor will be paid by the Borrower. All expenses plus any applicable administration

1504086.02

fees of the Lockbox will be paid by Borrower. All accounts specifically submitted to Crestmark with Account Documents for which an Advance is made will be known as Crestmark Accounts (the "Crestmark Accounts").

C. Borrower agrees that Crestmark has the right to determine, in its sole discretion, whether any account is an Eligible Account, or which inventory constitutes Eligible Inventory, but no account or inventory will be eligible for Advance unless the eligibility requirements set forth in the Schedule are met.

**6.** **RESERVES.** If Crestmark believes in its sole discretion that the prospect for repayment of the Indebtedness is impaired or that its Collateral margin is insufficient, Crestmark may establish cash reserves and credit balances to protect its interests and the repayment of the Indebtedness. Money in the reserve account will not earn interest for Borrower, and Crestmark may apply the funds in the Reserve to reduce the Indebtedness at any time Crestmark elects.

**7.** **FEES AND EXPENSES.** In connection with the Loan there are several types of fees that may be charged. The fees to be charged with respect to the Loan are shown on the Schedule. In addition, all expenses of every kind incurred by Crestmark in connection with the Loan, or any Advance or for collection of the Indebtedness, or inspection and examination are to be paid by Borrower, including but not limited to Crestmark's actual attorney's fees, postage and UCC search charges.

**8.** **MINIMUM BALANCE.** Borrower agrees that it will maintain a minimum Loan balance in the amount shown on the Schedule for the period shown and Borrower understands that the Interest Rate and Maintenance Fee has been calculated on that minimum loan balance.

**9.** **LOAN ACCOUNT.** All of the Indebtedness which is owed by Borrower will be shown in the Loan Account and Borrower will receive a monthly interest statement. The statement is binding on Borrower unless Borrower provides a written objection to Crestmark that is actually received by Crestmark within ten (10) business days of the time the Loan Account statement is mailed.

**10.** **CALCULATION OF INDEBTEDNESS.** Each time an Advance is made, the amount of the Indebtedness will be increased by the amount of the Advance. Three (3) business days after checks or other credit instruments are deposited in the Lockbox Account, Crestmark will credit the Loan Account with the net amount of cash actually received and will no longer charge Interest and Maintenance Fee upon such amount. Also, on the date the deposit is made the Borrower will receive immediate credit on the funds deposited in determining Availability. Should a check or other credit instrument not be collected after the Borrower has been given credit, then the credit will be reversed. The Borrower should understand, however, that if Crestmark has some question about the collectability of funds it does not have to give credit until the funds are actually collected and in such event if the deposit is held for a longer period of time then the Maintenance Fee will still be payable.

**11.** **PAYMENTS.** When Crestmark receives a payment from an Account Debtor, it will try to apply it against the appropriate Debtor. If it is not clear which accounts the payment is suppose to be applied against, Crestmark will contact the Borrower for assistance. Unless there is clear error, the application of repayment by Crestmark is final. Any payments received by Crestmark if made with respect to a Crestmark Account will be applied to the Advance on that account, then to the Maintenance Fee for that account, then to the interest on that account, then to expenses, then either to the reserve or to Borrower.

**12.** **LOCKBOX.** All payments from all Account Debtors will be deposited in an account ("Lockbox Account") at the bank identified on the Schedule as the Lockbox Bank. Crestmark will have sole control over the Lockbox Account. The Lockbox Bank will process all deposits and Borrower has no right to the Lockbox Account, it belongs to Crestmark. All documents received in the Lockbox Account from Account Debtors, other than the payments, will be delivered to Borrower. Borrower gives Crestmark an irrevocable Power of Attorney which is coupled with an interest to endorse all items delivered to the Lockbox with Borrower's name. If Borrower receives any payments from an Account Debtor, the Borrower must hold the sum in trust for Crestmark and not mix the funds received with any other funds, and shall immediately deposit the funds in the Lockbox Account in the form received. That means if the funds are received by mail, the checks will be sent to the Lockbox Account, and if the funds are received electronically, the funds will be transferred to the Lockbox Account electronically. Crestmark is the owner of all deposits in the Lockbox Account, and has no duty as to collection or protection of funds as long as it is not grossly negligent or commits actual fraud.

3

**13.  REPRESENTATIONS.**  Borrower makes the following statements (representations) to Crestmark and such statements must be true at all times until the Indebtedness is paid in full.  If Borrower learns that a statement once made is no longer true, it has the duty to notify Crestmark in writing:

**A.**  Borrower is in good standing under the laws of the state shown on the Schedule , has the power and authority to enter into this Agreement, and the persons signing this Agreement and all persons who sign any documents with Crestmark have the appropriate authority.  Borrower's identification numbers and addresses are as shown on the Schedule.

**B.**  Borrower's entry into the Loan Documents do not violate any agreement which Borrower has or which binds Borrower.

**C.**  The Loan Documents are fully enforceable against Borrower.

**D.**  There is no litigation pending or threatened against Borrower and Borrower is not in default of any order or judgment of any court or any governmental agency of any kind.

**E.**  The financial information furnished to Crestmark has been prepared in accordance with generally accepted accounting principles, all financial statements are true, and any projections of the business operations of Borrower that have been given or will be given to Crestmark in the future will be based upon Borrower's reasonable assumptions and estimates.

**F.**  The Borrower is the owner of all of the Collateral and there are no other liens or claims against the Collateral, except the Security Interest of Crestmark or as shown on the Schedule.

**G.**  All of the Collateral is personal property and none of the Collateral will be affixed to real estate.

**H.**  Borrower has filed and will file all federal, state, local and foreign tax returns that it is required to file and has paid and will pay all taxes and all other governmental charges as they become due.

**I.**  That Borrower is solvent, is able to pay its debts as they become due, and has sufficient capital to carry on its business.  This Agreement, the Loan Documents and the loans made by Crestmark do not render Borrower insolvent, and the Security Interest granted to Crestmark does not render Borrower insolvent.

**14.  BORROWER'S PROMISES.**  Borrower makes the following promises to Crestmark and these promises are effective until the Indebtedness is fully paid:

**A.**  To pay all Indebtedness when due and perform all terms, conditions and obligations of the Loan Documents.

**B.**  To permit Crestmark, or its representatives, access to the Collateral on Borrower's premises and to Borrower's computer systems, books of account and financial records.

**C.**  To notify Crestmark promptly of any litigation, administrative or tax proceeding or other action threatened or instituted against the Borrower or its property, or of any other material matter which may adversely affect Borrower's financial condition.  The amount of claims as to which Borrower must notify Crestmark is specified in the Schedule.

**D.**  To pay when due all taxes, assessments and governmental charges, provided that the Borrower has the right to contest the same as long as it has, in the opinion of Crestmark, sufficient cash reserves to pay the charge when due.

**E.**  To maintain its business by complying with the Financial Covenants described in the Schedule.

**F.**  To maintain insurance on its business activities in such amount and in such form as Crestmark may from time to time require, and with respect to such insurance if so designated, Crestmark shall be named as "Lender Loss Payee" under the policy and receive evidence of the insurance.  All insurance which protects Crestmark shall have at least a 30-day notice to Crestmark prior to any cancellation.  With respect to the insurance, Borrower

4

appoints Crestmark as its attorney-in-fact to negotiate any and all claims under all insurance policies and Crestmark also has the power to negotiate any payments on the insurance policies.

G.  To comply with all laws, ordinances and regulations or other requirements of any governmental authority or agency applicable to Borrower's business.

H.  To maintain and preserve all Collateral in good repair, working order and condition, and with respect to accounts, pursue collections thereof.

I.  To provide Crestmark with evidence of ownership of any Collateral.

15.  **NEGATIVE COVENANTS**.  Borrower agrees until the Indebtedness is paid in full, it will not:

A.  Change its state of organization or its name, or move its executive office without giving Crestmark at least 60 days prior written notice or at any time adopt any assumed name.

B.  Declare or pay any dividend or make any other distribution with regard to its equity or purchase or retire any of its equity, provided if it is taxed as an S Corporation or other "pass through" entity, Borrower may distribute profits to its equity holders in an amount necessary to enable such holders to pay personal, state and federal taxes directly attributable to the profits earned by Borrower for such year.

C.  Make any loan or assume any obligations or liabilities, as guarantor, surety, indemnitor or otherwise.

D.  Enter into any transaction with its equity holders or any affiliates of Borrower except on terms at least as favorable as would be usual and customary in similar transactions if the person with whom the transaction is entered into was not related to Borrower.

E.  Release, redeem, require, purchase or acquire any of its equity interest.

F.  Default in the payment of any debt to any other person.

G.  Suffer or permit any judgment, decree or order not fully covered by insurance to be entered against the Borrower or a Guarantor, or permit or suffer any warrant or attachment to be filed against Borrower, any Guarantor, or against any property or asset of Borrower or Guarantor.

16.  **FINANCIAL REPORTS**.  Borrower promises that until the Indebtedness is fully paid and this Agreement is terminated, it will keep books in a manner satisfactory to Crestmark and Crestmark will have the right at any time to verify any of the Collateral, documentation or books in whatever manner and as often as Crestmark deems necessary. Borrower will furnish to Crestmark the financial reports identified on the Schedule, certified to by the president or chief financial officer of the Borrower. All financial reports will be prepared in accordance with generally acceptable accounting principles and will be true and accurate.

17.  **CRESTMARK'S REMEDIES**.  Crestmark has all the remedies available at law or in equity (including those under the UCC) in the event Borrower either violates this Agreement or fails to pay the Indebtedness on demand, including but not limited to the following: to charge the Extra Rate; to notify Account Debtors to make the payments directly to Crestmark; to settle or compromise any disputed account, sue on any account and make any agreement to deal with the accounts as if it were the owner; to offset any of Borrower's or Guarantor's funds under the control of Crestmark against the Indebtedness; and to require the Borrower to gather up the Collateral and make it available to Crestmark for Crestmark to conduct public or private UCC foreclosure sales. If Crestmark should proceed against the Collateral and sell any of the Collateral on credit, the Borrower will be credited on the Indebtedness only with the amount actually received by Crestmark and the Borrower waives any and all provisions as to notice or a particular method of sale of any of the Collateral. The Borrower will pay all expenses in connection with the assembly or sale of the Collateral. Crestmark does not have to incur its own expenses in realizing upon the Collateral, but all the expenses are for the account of the Borrower. Borrower recognizes that at no time is Crestmark its agent in dealing with the Collateral, but Crestmark acts only in its own interest.

18.  **STANDARDS APPLICABLE TO REMEDIES**.  If Crestmark should exercise any remedies, Borrower agrees that it is not commercially unreasonable for Crestmark: to fail to exercise remedies against any

5

Collateral or any particular Account Debtor; to proceed against Account Debtors either directly or through collection agencies; to advertise disposition of Collateral through publications or media of general circulation; to hire professional auctioneers to dispose of Collateral; to dispose of Collateral in wholesale or retail markets; to disclaim warranties with respect to Collateral; or to obtain services of attorneys or other professionals. The foregoing section is to provide an exhaustive list and nothing contained in the foregoing grants any rights to the Borrower, which are not granted by applicable law or the Loan Documents. Borrower agrees that under no circumstances is Crestmark the agent or representative of the Borrower.

**19. APPLICATION OF PROCEEDS.** Once collection efforts are commenced by Crestmark, any proceeds of sale or disposition of Collateral may be applied by Crestmark first to expenses authorized by this Agreement including Crestmark's actual attorneys' fees which Borrower must pay, and the balance to payment of the Indebtedness in such manner as Crestmark may elect. Borrower and Guarantor remain liable for any deficiency.

**20. NOTICES.** Any notice is effective by either party if sent in writing or facsimile with confirmation of receipt or by certified mail or personal delivery or expedited mail services to the addresses shown on the Schedule.

**21. MISCELLANEOUS PROVISIONS.**

**A.** This Agreement is binding upon and is for the benefit of the Borrower, Guarantor and Crestmark, and their respective successors and assigns. However, under no circumstances may Borrower assign this Agreement or its rights and duties hereunder. Crestmark may assign this Agreement and its rights under the Loan Documents and Borrower will make payments to any such assignee if so directed.

**B.** Crestmark has the right at any time to assign, transfer, negotiate or sell participations in this Agreement or the Indebtedness or the rights of Crestmark hereunder. In connection with any assignment, Borrower consents to disclosure of any and all books, records, files, Loan Documents and all other documents in the possession or under the control of Crestmark.

**C.** No delay or failure of Crestmark in exercising any right or remedy will affect such right or remedy. No delay or failure of Crestmark to demand strict adherence to the terms of this Agreement will be deemed to waive Crestmark's rights to demand such adherence at any time in the future.

**D.** This Agreement and the Loan Documents will be interpreted and determined under the laws of the State of Michigan without any regard to any conflict of laws provisions.

**E.** Borrower and Guarantor, at Crestmark's request, will make, execute and acknowledge any and all further instruments or agreements necessary to carry out the intent of this Agreement the Loan Documents.

**F.** Borrower hereby agrees to indemnify, defend and hold Crestmark harmless against any and all liabilities of any kind, nature or description and damages whether they are direct, indirect or consequential and actual attorney's fees incurred or suffered directly or indirectly by Crestmark or asserted against Crestmark by anyone whosoever, including Borrower or Guarantor, which arise out of the Loan Documents or the relationship and transaction between the Parties.

**G.** Neither Crestmark or its affiliates directors, officers, agents, attorneys or employees are liable to Borrower or Guarantor or affiliates for any action taken or omitted by it or any of them under the Loan Documents except for such liability as may be imposed by law for gross negligence or actual fraud, and no claim shall be made by Borrower or Guarantor or any of Borrower's affiliated, directors, officers, agents, employees for any special or consequential damages or punitive damages arising out of, or related to the Loan Documents or the transactions between the Parties.

**H.** This Agreement is the complete Agreement between the parties and there are no other agreements. This Agreement may be amended only in writing.

**I.** If any provision of this Agreement is in conflict with any law or statue or is otherwise unenforceable, then the provision will be deemed null and void only to the extent of such provision and the provision will be deemed severable and the remainder of this Agreement shall be in full force and effect.

6

**J.**     Any payment made to Crestmark by either Borrower or Guarantor which is subsequently invalidated, declared fraudulent or preferential or otherwise set aside under any bankruptcy, state, federal or equitable law, then to the extent of such invalidity such payment will be deemed not to have been made and the obligation will continue in full force and effect.

**K.     USA Patriot Act Notification** – The following notification is provided to Borrower pursuant to Section 3265 of the USA Patriot Act of 2001, 31 U.S.C. Section 5318:

> **IMPORTANT INFORMATION ABOUT PROCEDURES FOR OPENING A NEW ACCOUNT.**  To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person or entity that opens an account, including any deposit account, treasury management account, loan or other extension of credit.  We will ask for the name, address, date of birth, and other information that will allow us to identify all Borrower's owners.  We will also ask to see your driver's license or other identifying documents.

**22.     JURISDICTION.**     BORROWER AND GUARANTOR AGREE THAT ANY ACTION TO ENFORCE BORROWER'S OR GUARANTOR'S OBLIGATIONS TO CRESTMARK SHALL BE PROSECUTED EITHER IN THE CIRCUIT COURT OF OAKLAND COUNTY MICHIGAN OR THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN, UNLESS CRESTMARK, IN ITS SOLE DESCRETION, ELECTS SOME OTHER JURISDICTION AND BORROWER AND GUARANTOR SUBMIT TO THE JURISDICTION OF ANY SUCH COURT SELECTED BY CRESTMARK.  BORROWER AND GUARANTOR WAIVE ANY AND ALL RIGHTS TO CONTEST THE JURISDICTION AND VENUE OF ANY ACTION BROUGHT IN THIS MATTER AND BORROWER AND GUARANTOR MAY BRING ANY ACTION AGAINST CRESTMARK ONLY IN THE CIRCUIT COURT FOR THE COUNTY OF OAKLAND OR THE FEDERAL COURT OR THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN.

**23.     WAIVER.**     ALL PARTIES, INCLUDING BORROWER AND GUARANTOR EACH KNOWINGLY AND VOLUNTARILY WAIVE ANY CONSTITUTIONAL RIGHT TO A TRIAL BY JURY WITH RESPECT TO ANY CLAIM, DISPUTE OR CONFLICT BETWEEN THE PARTIES OR UNDER THE LOAN DOCUMENTS AND AGREE THAT ANY LITIGATION SHALL BE HEARD BY A COURT OF COMPETENT JURISDICTION SITTING WITH OUT A JURY.  BORROWER AND GUARANTOR ACKNOWLEDGE THAT THEY HAVE HAD THE OPPORTUNITY TO REVIEW THE EFFECT OF THIS PROVISION WITH COUNSEL OF THEIR CHOICE.

**24.     RELEASE.**     BORROWER AND GUARANTOR RELEASE AND FOREVER DISCHARGE CRESTMARK, ITS AFFILIATES, OFFICERS, AGENTS, EMPLOYEES AND DIRECTORS FROM ANY AND ALL CLAIMS OF ANY KIND WHATSOEVER FROM THE BEGINNING OF TIME TO DATE OF THIS AGREEMENT.

The parties have executed this Agreement as of the date and year first written above.

**CRESTMARK:**

**CRESTMARK TPG LLC**

By:  Bryan Alsobrooks
Its:  SVP

**BORROWER:**

By:  George Loeber
Its:  President

1504086.02

## SCHEDULE TO LOAN AND SECURITY AGREEMENT
DATED: January 12, 2009

This Schedule is part of the Agreement between:

CRESTMARK TPG LLC ("CRESTMARK")
30 BURTON HILLS BLVD
SUITE 576
NASHVILLE, TN 37215

AND

IDDINGS TRUCKING, INC. ("BORROWER")
741 BLUE KNOB ROAD
MARIETTA, GA 45750

The following paragraph numbers correspond to paragraph numbers contained in the Agreement.

1.     **LOAN**.  The Indebtedness will not exceed an amount which is the lesser of:

(a)    Two Million Dollars (2,000,000.00) ("Maximum Amount"), or

(b)    Ninety percent (90 %) of Eligible Accounts ("Advance Formula").

**Eligible Accounts** are accounts that arise in the ordinary course of business, are represented by an invoice, are presently due, are free from any dispute, are not from any parent, subsidiary or affiliate of Borrower, and are acceptable to Crestmark in its sole discretion. Excluded from Eligible Accounts are accounts that: (i) are more than 90 days from invoice date; (ii) are from an Account Debtor that is located outside the United States; (iii) are from an Account Debtor on a bill and hold, guaranteed sale, C.O.D. sale, return sale of any kind, sale on approval, consignment or other conditional sale; (iv) are for tooling; or (v) are contra accounts or are from an Account Debtor who is owed money by Borrower.

2.     **Fees**.  The following fees will be charged to the Borrower:

**Documentation Fee**.  In consideration of the extension of the Loan and the execution of this Agreement, Borrower will pay Crestmark a documentation fee of $2,000.00, which fee is fully earned as of the date hereof and is non-refundable.

**Loan Fee**:  At closing of the Loan and on each one year anniversary of the date of the Agreement, Borrower will pay Crestmark a non-refundable loan fee in the aggregate amount of Three Thousand ($3,000.00) Dollars.

**Maintenance/Collection Fee**.  On each Crestmark Account, Borrower will pay Crestmark a maintenance fee equal to **.30%** of the face amount of the Crestmark Account and a collection fee of **.20%** for invoices collected between days 51-70 and **.40%** for invoices collected between 71-90 days. If Crestmark is not able to collect the Crestmark Account, the Maintenance Fee will be paid by Borrower on demand by Crestmark and the applicable Maintenance Fee rate will be based on when Crestmark is paid.  Notwithstanding any of the foregoing, the collected Maintenance Fee plus collected interest payments under the Note will be a minimum monthly amount of **$5,666 per month for the first six months** until this Agreement is terminated and Crestmark is repaid the Indebtedness in full, including any exit fee contained in the Note.

3.     **MINIMUM LOAN BALANCE**.  At all times the minimum Loan balance that Borrower must maintain is $850,000.00.

4.      **LOCKBOX.** The Lockbox Bank is:

>PO Box 290789
>Nashville, TN 37229

5.      **REPRESENTATIONS.**

(A)     Borrower is a corporation organized in the state of OH.

(B)     List Security Interests in the Collateral held by creditors other than Crestmark as Permitted Encumbrances:

GE CAPITAL – BUYOUT AND UCC TERMINATION

_____

_____

_____

6.      **FINANCIAL REPORTS.**

<u>Annual Financial Statements</u>:  Each year Borrower will deliver to Crestmark annual financial statements, cash flow statements, balance sheets, and profit and loss statements prepared by a certified public accountant acceptable to Crestmark.  Such reports will set forth in detail Borrower's true condition as of the end of Borrower's fiscal year no later than ninety (90) days after the end of Borrower's fiscal years.

<u>Tax Returns</u>:  Guarantor and Borrower will each provide Crestmark with current annual tax returns prior to April 15 of each year or if an extension is filed, at the earlier of (a) filing, or (b) the extension deadline.

<u>Field Examinations</u>:  Borrower will permit Crestmark to perform one (1) field examinations per year of Borrower's assets and liabilities, to be performed by Crestmark's inspector, whether a Crestmark officer or an independent party with all expenses (whether for a Crestmark employee or otherwise) paid by Borrower.  Upon an event of Default, the number of field examinations can be increased in Crestmark's sole discretion.

<u>Customer Lists</u>:  Upon Crestmark's request, Borrower will deliver to Crestmark detailed customer lists showing the customer's name, address, phone number and any other information Crestmark requests.

<u>Other Information</u>:  Borrower and Guarantor will also deliver to Crestmark such other financial statements, financial reports, documentation, tax returns and other information as Crestmark requests from time to time.

- 2 -

1504088.02

Borrower Signature

By:  George Loeber

Its:_ President

1504088.02

### AMENDMENT NO. 1
### TO
### SCHEDULE TO LOAN AND SECURITY AGREEMENT

This Amendment No. 1 to Schedule to Loan and Security Agreement is made this **25**[th] day of **October, 2012**, by and between **CRESTMARK TPG LLC** a Michigan limited liability company, whose address is 800 Crescent Centre Drive, Suite 620, Franklin, TN 37067 ("Crestmark"), and **Iddings Trucking, Inc.**, a Ohio corporation whose chief executive office is located at 741 Blue Knob Road, Marietta, Ohio 45750 ("Borrower"), and George C. Loeber, whose address is 4350 St. Rt. 26, Marietta, OH 45750 and Thomas E. Hall, whose address is 4255 St. Rt. 26, Marietta, OH 45750 ("Guarantors").   This Amendment No. 1 amends that certain Loan and Security Agreement and Schedule executed January 12, 2009 (as amended, collectively referred to herein as the "Agreement").

BACKGROUND:

The parties have executed the Agreement and Loan Documents;

The Borrower and Guarantor are indebted and/or obligated to Crestmark without offset or deduction pursuant to the Agreement and the Loan Documents all of which are in full force and effect; and

Borrower, Crestmark, and Guarantor, desire to modify and amend certain terms, conditions, covenants and obligations contained in the Agreement and the Loan Documents, including, but not limited to, revising the Maintenance Fee and the interest rate as set forth in the Note.

Accordingly, the parties agree as follows:

1. <u>INCORPORATION BY REFERENCE</u>:

All definitions and terms used in the Agreement, Schedule and the Loan Documents are hereby incorporated in this Amendment No. 1.

2. <u>AMENDMENTS AND MODIFICATIONS TO THE AGREEMENT</u>:

A.     Section 1. (b) LOAN of the Schedule to the Agreement is hereby deleted in its entirety, and in lieu thereof, the following is inserted:

(b)     Ninety and 20/100 percent (90.20 %) of Eligible Accounts ("Advance     Formula").

B.     Section 2.   **Fees--- Documentation Fee** of the Schedule to the Agreement is hereby deleted in its entirety.

C.     Section 2.   **Fees---Loan Fee** of the Schedule to the Agreement is hereby deleted in its entirety.

D.     Section 2.   **Fees -- Maintenance/Collection Fee** of the Schedule to the Agreement is hereby deleted in its entirety, and in lieu thereof, the following is inserted:

**Maintenance/Collection Fee**. On each Crestmark Account, Borrower will pay Crestmark a maintenance fee equal to two tenths of one (0.20%) percent of the face amount of the Crestmark Account at purchase. If Crestmark is not able to collect the Crestmark Account, the Maintenance Fee will be paid by Borrower on demand by Crestmark and the applicable Maintenance Fee rate will be based on when Crestmark is paid. Notwithstanding any of the foregoing, the collected Maintenance Fee plus collected interest payments under the Note will be a minimum monthly amount of Five Thousand ($5,000.00) Dollars per month until this Agreement is terminated and Crestmark is repaid the Indebtedness in full, including any exit fee contained in the Note.

E.    Section 10 of the Schedule to the Agreement is hereby deleted in its entirety, and in lieu thereof, the following is inserted:

**CALCULATION OF INDEBTEDNESS**.   Each time an Advance is made, the amount of the Indebtedness will be increased by the amount of the Advance. **Two (2)** business days after checks or other credit instruments are deposited in the Lockbox Account, Crestmark will credit the Loan Account with the net amount of cash actually received and will no longer charge Interest and Maintenance Fee upon such amount. Also, on the date the deposit is made the Borrower will receive immediate credit on the funds deposited in determining Availability. Should a check or other credit instrument not be collected after the Borrower has been given credit, then the credit will be reversed.   The Borrower should understand, however, that if Crestmark has some question about the collectability of funds it does not have to give credit until the funds are actually collected and in such event if the deposit is held for a longer period of time then the Maintenance Fee will still be payable.

F.    Exit Fee, is here added to Section 4 of the Schedule to the Agreement and shall read as follows:

**Exit Fee**:   Borrower may elect to prepay the Obligations but only upon the payment of all Obligations including the following exit fee ("Exit Fee"), as liquidated damages and not as a penalty: an amount equal to Five Thousand ($5,000.00) dollars multiplied by the number of months remaining from the date of the termination of the Agreement until October 25, 2013.   For example, if Borrower terminates the Agreement on February 10, 2013, Borrower shall pay Crestmark $5,000.00 x 8 (mos.), or $40,000.00.   No partial prepayment will affect Borrower's obligation to continue to pay the Obligations as provided in the Note and the Agreement.   On and after October 25, 2013, Borrower shall notify Crestmark in writing of Borrower's intention to terminate the Agreement no less than thirty days prior to such termination and to pay off the Obligations in full. In the event that a Default has occurred and is continuing at the time Crestmark demands payment of the Obligations, the then outstanding Exit Fee will be due and payable by Borrower.   After October 25, 2013, the Agreement shall be effective on a month-to-month basis and no Exit Fee will apply.

2

**3.    REAFFIRMATION OF GUARANTY:**

As a specific inducement to Crestmark, and in consideration of Crestmark's reliance hereon, Guarantors has executed the Guaranty dated January 12, 2009, "Guaranty"). Guarantors hereby acknowledges and agrees to the amendments and modification set forth above and reaffirms the Guaranty with respect to all liabilities, obligations and the Indebtedness therein guaranteed as herein amended and modified.   Guarantor further acknowledges that Guarantor remains liable in accordance with the terms of the Guaranty without offset or counterclaim. Guarantor also acknowledges and agrees that Guarantor's liability under the Guaranty is unlimited.

**4.    SMALL BUSINESS JOBS ACT CERTIFICATION** – Pursuant to Section 4107(d)(2) (the "Section") of the Small Business Jobs Act of 2010, certification is required from any business receiving a loan using funds received by the institution under the Small Business Lending Act. As required by the Section, the Borrower hereby certifies to Crestmark that the principals of Borrower and its affiliates have not been convicted of, or pleaded nolo contendere to, a sex offense against a minor (as such terms are defined in section 111 of the Sex Offender Registration and Notification Act (42 U.S.C. 16911)).

The term "principals" is defined as follows: if a sole proprietorship, the proprietor; if a partnership, each managing partner and each partner who is a natural person and holds a 20% or more ownership interest in the partnership; and if a corporation, limited liability company, association or a development company, each director, each of the five most highly compensated executives or officers of the entity, and each natural person who is a direct or indirect holder of 20% or more of the ownership stock or stock equivalent of the entity.

**6.    NO WAIVER:**

Borrower acknowledges that the execution of this Amendment No. 1 does not constitute a waiver or cure of any Default, whether matured or otherwise, if any, that previously existed or now exists under the Agreement or any Loan Document.  By execution of this Amendment No. 1, Crestmark will not be deemed to have waived any of its rights or remedies under the Agreement or any Loan Document.

**7.    SURVIVAL, REAFFIRMATION, AND NO DEFENSES:**

Each undersigned Borrower and Guarantor agrees, in all capacities in which the signatory has executed the Agreement or any of the Loan Documents, as follows:

3

A.    That, except as herein expressly modified or amended, all terms, conditions, covenants, representations and warranties contained in the Agreement and the Loan Documents are true and correct, continue to be satisfied in all respects and are legal, valid and binding obligations.  The undersigned hereby ratify, agree to and confirm the Agreement and the Loan Documents and consent to and acknowledge the foregoing Amendment No. 1.

B.    That payment of the Indebtedness is the valid obligation of Borrower and Guarantor and, as of the date hereof, Borrower and Guarantor have absolutely no defenses, claims, rights of set-off or counterclaims against Crestmark or the payment of the Indebtedness. This Amendment No. 1 shall not impair the rights, remedies and Collateral given in the Agreement and the Loan Documents.

C.    That the liability of the undersigned howsoever arising or provided for in the Agreement and the Loan Documents is hereby reaffirmed.

8.    **RELEASE**:

In consideration of Crestmark executing this Amendment No. 1, Borrower and Guarantor do each hereby release and discharge Crestmark of and from any and all claims, harm, causes of action, liabilities, injuries, expenses (including attorneys' fees) and damages of any and every kind, known or unknown, legal or equitable, which Borrower or Guarantor have against Crestmark from the date of Borrower's and Guarantor's first contact with Crestmark up to the date of this Amendment No. 1.  Borrower and Guarantor confirm to Crestmark that they have reviewed the effect of this release with legal counsel of their choice, or have been afforded the opportunity to do so, prior to the execution of this Amendment No. 1 and each acknowledges and agrees that Crestmark is relying upon this release in executing this Amendment No. 1.

9.    **CONFIRMATION OF LIEN UPON COLLATERAL:**

The Borrower acknowledges and agrees that pursuant to the terms of the Agreement, the obligations of the Borrower and the Indebtedness are secured by a first priority lien and security interest in the Collateral (as defined in the Agreement).  The Collateral is and shall remain subject to and encumbered by the lien, charge, and encumbrance of the Agreement, and nothing contained herein shall affect or be construed to affect the lien or encumbrance created by the Agreement or the priority thereof.

10.    **NO ORAL MODIFICATION:**

This Amendment No. 1 may only be altered or modified by written instrument duly executed by Borrower and Crestmark.

4

The parties hereto have executed this Amendment No. 1 the day and year first appearing above.

"CRESTMARK"

**Crestmark TPG LLC**
a Michigan limited liability company

By: _____
　　Mark Decker, Assistant Vice President

"BORROWER"

**Iddings Trucking, Inc.**
a Ohio corporation

By: _____
　　George C. Loeber, President

"GUARANTORS"

_____
George C. Loeber

_____
Thomas E. Hall

5

The parties hereto have executed this Amendment No. 1 the day and year first appearing above.

"CRESTMARK"                                    "BORROWER"

Crestmark TPG LLC                              Iddings Trucking, Inc.
a Michigan limited liability company           a Ohio corporation

By: _Mark Decker_____                      By: _George C. Loeber_ Pres
    Mark Decker, Assistant Vice President          George C. Loeber, President

"GUARANTORS"

_George C. Loeber_____
George C. Loeber

_Thomas E. Hall_____
Thomas E. Hall

5

AMENDMENT NO. 2
TO
SCHEDULE TO LOAN AND SECURITY AGREEMENT

This Amendment No. 2 to Schedule to Loan and Security Agreement is made this **6th** day of **October, 2014**, by and between **CRESTMARK BANK** a Michigan banking company, ("Crestmark"), and **Iddings Trucking, Inc.**, a Ohio corporation whose chief executive office is located at 741 Blue Knob Road, Marietta, Ohio 45750 ("Borrower"), and George C. Loeber, whose address is 4350 St. Rt. 26, Marietta, OH 45750 and Thomas E. Hall, whose address is 4255 St. Rt. 26, Marietta, OH 45750 ("Guarantors"). This Amendment No. 2 amends that certain Loan and Security Agreement and Schedule executed January 12, 2009, as amended by Amendment No.1 to Schedule to Loan and Security Agreement dated October 25, 2012 (as amended, collectively referred to herein as the "Agreement").

BACKGROUND:

The parties have executed the Agreement and Loan Documents;

The Borrower and Guarantor are indebted and/or obligated to Crestmark without offset or deduction pursuant to the Agreement and the Loan Documents all of which are in full force and effect; and

Borrower, Crestmark, and Guarantor, desire to modify and amend certain terms, conditions, covenants and obligations contained in the Agreement and the Loan Documents, including, but not limited to, revising the Maximum Amount.

Accordingly, the parties agree as follows:

1.      **INCORPORATION BY REFERENCE:**

All definitions and terms used in the Agreement, Schedule and the Loan Documents are hereby incorporated in this Amendment No. 2.

2.      **AMENDMENTS AND MODIFICATIONS TO THE AGREEMENT:**

      A.      Section 1. (a) <u>LOAN</u> of the Schedule to the Agreement is hereby deleted in its entirety, and in lieu thereof, the following is inserted:

      (a) Two Million Nine Hundred Thousand Dollars ($2,900,000.00) ("Maximum Amount") or

      B.      Section  2.   **Fees--- Exit Fee:** of the Schedule to the Agreement is hereby amended and reads as follows:

      <u>Exit Fee</u>:  Borrower may elect to prepay the Obligations but only upon the payment of all Obligations including the following exit fee ("Exit Fee"), as liquidated damages and not as a penalty:  an amount equal to Five Thousand ($5,000.00) dollars multiplied by the number of months remaining from the date of the termination of the Agreement until October 6, 2016.   No partial prepayment will affect Borrower's obligation to continue to pay the Obligations

as provided in the Note and the Agreement.  On and after October 6, 2016, Borrower shall notify Crestmark in writing of Borrower's intention to terminate the Agreement no less than thirty days prior to such termination and to pay off the Obligations in full.  In the event that a Default has occurred and is continuing at the time Crestmark demands payment of the Obligations, the then outstanding Exit Fee will be due and payable by Borrower.   After October 6, 2016, the Agreement shall be effective on a month-to-month basis and no Exit Fee will apply.

3.      **REAFFIRMATION OF GUARANTY**:

As a specific inducement to Crestmark, and in consideration of Crestmark's reliance hereon, Guarantors has executed the Guaranty dated January 12, 2009, "Guaranty"). Guarantors hereby acknowledges and agrees to the amendments and modification set forth above and reaffirms the Guaranty with respect to all liabilities, obligations and the Indebtedness therein guaranteed as herein amended and modified.  Guarantor further acknowledges that Guarantor remains liable in accordance with the terms of the Guaranty without offset or counterclaim. Guarantor also acknowledges and agrees that Guarantor's liability under the Guaranty is unlimited.

4.      **SMALL BUSINESS JOBS ACT CERTIFICATION** – Pursuant to Section 4107(d)(2) (the "Section") of the Small Business Jobs Act of 2010, certification is required from any business receiving a loan using funds received by the institution under the Small Business Lending Act. As required by the Section, the Borrower hereby certifies to Crestmark that the principals of Borrower and its affiliates have not been convicted of, or pleaded nolo contendere to, a sex offense against a minor (as such terms are defined in section 111 of the Sex Offender Registration and Notification Act (42 U.S.C. 16911)).

1.1    The term "principals" is defined as follows: if a sole proprietorship, the proprietor; if a partnership, each managing partner and each partner who is a natural person and holds a 20% or more ownership interest in the partnership; and if a corporation, limited liability company, association or a development company, each director, each of the five most highly compensated executives or officers of the entity, and each natural person who is a direct or indirect holder of 20% or more of the ownership stock or stock equivalent of the entity.

5.      **NO WAIVER**:

Borrower acknowledges that the execution of this Amendment No. 2 does not constitute a waiver or cure of any Default, whether matured or otherwise, if any, that previously existed or now exists under the Agreement or any Loan Document.  By execution of this Amendment No. 2, Crestmark will not be deemed to have waived any of its rights or remedies under the Agreement or any Loan Document.

6.      **SURVIVAL, REAFFIRMATION, AND NO DEFENSES**:

2

Each undersigned Borrower and Guarantor agrees, in all capacities in which the signatory has executed the Agreement or any of the Loan Documents, as follows:

A.    That, except as herein expressly modified or amended, all terms, conditions, covenants, representations and warranties contained in the Agreement and the Loan Documents are true and correct, continue to be satisfied in all respects and are legal, valid and binding obligations.  The undersigned hereby ratify, agree to and confirm the Agreement and the Loan Documents and consent to and acknowledge the foregoing Amendment No. 2.

B.    That payment of the Indebtedness is the valid obligation of Borrower and Guarantor and, as of the date hereof, Borrower and Guarantor have absolutely no defenses, claims, rights of set-off or counterclaims against Crestmark or the payment of the Indebtedness. This Amendment No. 2 shall not impair the rights, remedies and Collateral given in the Agreement and the Loan Documents.

C.    That the liability of the undersigned howsoever arising or provided for in the Agreement and the Loan Documents is hereby reaffirmed.


7.    **RELEASE**:

In consideration of Crestmark executing this Amendment No. 2, Borrower and Guarantor do each hereby release and discharge Crestmark of and from any and all claims, harm, causes of action, liabilities, injuries, expenses (including attorneys' fees) and damages of any and every kind, known or unknown, legal or equitable, which Borrower or Guarantor have against Crestmark from the date of Borrower's and Guarantor's first contact with Crestmark up to the date of this Amendment No. 2.  Borrower and Guarantor confirm to Crestmark that they have reviewed the effect of this release with legal counsel of their choice, or have been afforded the opportunity to do so, prior to the execution of this Amendment No. 2 and each acknowledges and agrees that Crestmark is relying upon this release in executing this Amendment No. 2.


8.    **CONFIRMATION OF LIEN UPON COLLATERAL:**

The Borrower acknowledges and agrees that pursuant to the terms of the Agreement, the obligations of the Borrower and the Indebtedness are secured by a first priority lien and security interest in the Collateral (as defined in the Agreement).  The Collateral is and shall remain subject to and encumbered by the lien, charge, and encumbrance of the Agreement, and nothing contained herein shall affect or be construed to affect the lien or encumbrance created by the Agreement or the priority thereof.

3

9.     **<u>NO ORAL MODIFICATION</u>:**

This Amendment No. 2 may only be altered or modified by written instrument duly executed by Borrower and Crestmark.


The parties hereto have executed this Amendment No. 2 the day and year first appearing above.



"CRESTMARK"                                    "BORROWER"

Crestmark Bank                                 Iddings Trucking, Inc.
a Michigan banking company                     a Ohio corporation

By: _____                    By: _____
     Scott Doyle, VP                                George C. Loeber, President


"GUARANTORS"

_____
George C. Loeber

_____
Thomas E. Hall




4

AMENDMENT NO. 3
TO
SCHEDULE TO LOAN AND SECURITY AGREEMENT

This Amendment No. 3 to Schedule to Loan and Security Agreement is made this
_30th_ day of **July, 2015**, by and between **CRESTMARK BANK** a Michigan banking
company, ("Crestmark"), and **Iddings Trucking, Inc.**, a Ohio corporation whose chief executive
office is located at 741 Blue Knob Road, Marietta, Ohio 45750 ("Borrower"), and George C.
Loeber, whose address is 4350 St. Rt. 26, Marietta, OH 45750 and Thomas E. Hall, whose
address is 4255 St. Rt. 26, Marietta, OH 45750 ("Guarantors"). This Amendment No. 3 amends
that certain Loan and Security Agreement and Schedule executed January 12, 2009, as
amended by Amendment No.1 to Schedule to Loan and Security Agreement dated October 25,
2012, as amended by Amendment No. 2 to Schedule to Loan and Security agreement dated
October 6, 2014 (as amended, collectively referred to herein as the "Agreement").

BACKGROUND:

The parties have executed the Agreement and Loan Documents;

The Borrower and Guarantor are indebted and/or obligated to Crestmark without offset
or deduction pursuant to the Agreement and the Loan Documents all of which are in full force
and effect; and

Borrower, Crestmark, and Guarantor, desire to modify and amend certain terms,
conditions, covenants and obligations contained in the Agreement and the Loan Documents,
including, but not limited to, revising the Maximum Amount.

Accordingly, the parties agree as follows:

1.    **INCORPORATION BY REFERENCE:**

All definitions and terms used in the Agreement, Schedule and the Loan Documents are
hereby incorporated in this Amendment No. 3.

2.    **AMENDMENTS AND MODIFICATIONS TO THE AGREEMENT:**

A.    **Section 1. LOAN: (b)** of the Schedule to the Agreement is hereby
deleted in its entirety, and in lieu thereof, the following is inserted:

(b)    Ninety Five percent (95%) of Eligible Accounts ("Advance
Formula").

B.    **Section 2. Fees -- Maintenance/Collection Fee** of the Schedule to the
Agreement is hereby deleted in its entirety, and in lieu thereof, the following is inserted:

**Maintenance/Collection Fee**. On each Crestmark Account, Borrower will pay
Crestmark a maintenance fee equal to two tenths of one (0.20%) percent of the face amount of
the Crestmark Account at purchase. If Crestmark is not able to collect the Crestmark Account,
the Maintenance Fee will be paid by Borrower on demand by Crestmark and the applicable

Maintenance Fee rate will be based on when Crestmark is paid. Notwithstanding any of the foregoing, the collected Maintenance Fee plus collected interest payments under the Note will be a minimum monthly amount of Four Thousand Eight Hundred and no/100 ($4,800.00) Dollars per month until this Agreement is terminated and Crestmark is repaid the Indebtedness in full, including any exit fee contained in the Note

3.      **REAFFIRMATION OF GUARANTY**:

        As a specific inducement to Crestmark, and in consideration of Crestmark's reliance hereon, Guarantors has executed the Guaranty dated January 12, 2009, "Guaranty"). Guarantors hereby acknowledges and agrees to the amendments and modification set forth above and reaffirms the Guaranty with respect to all liabilities, obligations and the Indebtedness therein guaranteed as herein amended and modified.  Guarantor further acknowledges that Guarantor remains liable in accordance with the terms of the Guaranty without offset or counterclaim. Guarantor also acknowledges and agrees that Guarantor's liability under the Guaranty is unlimited.

4.      **SMALL BUSINESS JOBS ACT CERTIFICATION** – Pursuant to Section 4107(d)(2) (the "Section") of the Small Business Jobs Act of 2010, certification is required from any business receiving a loan using funds received by the institution under the Small Business Lending Act. As required by the Section, the Borrower hereby certifies to Crestmark that the principals of Borrower and its affiliates have not been convicted of, or pleaded nolo contendere to, a sex offense against a minor (as such terms are defined in section 111 of the Sex Offender Registration and Notification Act (42 U.S.C. 16911)).

        1.1     The term "principals" is defined as follows: if a sole proprietorship, the proprietor; if a partnership, each managing partner and each partner who is a natural person and holds a 20% or more ownership interest in the partnership; and if a corporation, limited liability company, association or a development company, each director, each of the five most highly compensated executives or officers of the entity, and each natural person who is a direct or indirect holder of 20% or more of the ownership stock or stock equivalent of the entity.

5.      **NO WAIVER**:

        Borrower acknowledges that the execution of this Amendment No. 3 does not constitute a waiver or cure of any Default, whether matured or otherwise, if any, that previously existed or now exists under the Agreement or any Loan Document.  By execution of this Amendment No. 3, Crestmark will not be deemed to have waived any of its rights or remedies under the Agreement or any Loan Document.

2

**6.    SURVIVAL, REAFFIRMATION, AND NO DEFENSES:**

Each undersigned Borrower and Guarantor agrees, in all capacities in which the signatory has executed the Agreement or any of the Loan Documents, as follows:

A.    That, except as herein expressly modified or amended, all terms, conditions, covenants, representations and warranties contained in the Agreement and the Loan Documents are true and correct, continue to be satisfied in all respects and are legal, valid and binding obligations.  The undersigned hereby ratify, agree to and confirm the Agreement and the Loan Documents and consent to and acknowledge the foregoing Amendment No.3.

B.    That payment of the Indebtedness is the valid obligation of Borrower and Guarantor and, as of the date hereof, Borrower and Guarantor have absolutely no defenses, claims, rights of set-off or counterclaims against Crestmark or the payment of the Indebtedness.  This Amendment No. 3 shall not impair the rights, remedies and Collateral given in the Agreement and the Loan Documents.

C.    That the liability of the undersigned howsoever arising or provided for in the Agreement and the Loan Documents is hereby reaffirmed.

**7.    RELEASE:**

In consideration of Crestmark executing this Amendment No. 3, Borrower and Guarantor do each hereby release and discharge Crestmark of and from any and all claims, harm, causes of action, liabilities, injuries, expenses (including attorneys' fees) and damages of any and every kind, known or unknown, legal or equitable, which Borrower or Guarantor have against Crestmark from the date of Borrower's and Guarantor's first contact with Crestmark up to the date of this Amendment No. 3.  Borrower and Guarantor confirm to Crestmark that they have reviewed the effect of this release with legal counsel of their choice, or have been afforded the opportunity to do so, prior to the execution of this Amendment No. 3 and each acknowledges and agrees that Crestmark is relying upon this release in executing this Amendment No. 3.

**8.    CONFIRMATION OF LIEN UPON COLLATERAL:**

The Borrower acknowledges and agrees that pursuant to the terms of the Agreement, the obligations of the Borrower and the Indebtedness are secured by a first priority lien and security interest in the Collateral (as defined in the Agreement).  The Collateral is and shall remain subject to and encumbered by the lien, charge, and encumbrance of the Agreement,

3

and nothing contained herein shall affect or be construed to affect the lien or encumbrance created by the Agreement or the priority thereof.

**9.**    **NO ORAL MODIFICATION:**

This Amendment No. 3 may only be altered or modified by written instrument duly executed by Borrower and Crestmark.

The parties hereto have executed this Amendment No. 3 the day and year first appearing above.

"CRESTMARK"                                    "BORROWER"

Crestmark Bank                                    Iddings Trucking, Inc.
a Michigan banking company                        a Ohio corporation

By: _____          By: _____
Scott Doyle, VP                                    George C. Loeber, President

"GUARANTORS"

_____
George C. Loeber

_____
Thomas E. Hall

4

File Number: OH00131766484
Date Filed: 12/23/2008 10:37 AM
Jennifer Brunner
Secretary of State

## UCC FINANCING STATEMENT

### FILER INFORMATION

**CONTACT INFORMATION FOR FILER:**

| CONTACT EMAIL | CONTACT NAME | CONTACT PHONE | CONTACT FAX |
|---|---|---|---|
| psaliga@crestmark.com | Saliga, Patty | (248) 267-1601 | (248) 267-1601 |

**SEND ACKNOWLEDGEMENT TO:**

| PACKET # | CLIENTS ACCOUNT # | | | | |
|---|---|---|---|---|---|
| TPG | 5480 | | | | |
| ORGANIZATION NAME | | | | | |
| Crestmark Bank | | | | | |
| MAILING ADDRESS | | CITY | STATE | POSTAL CODE | COUNTRY |
| 5480 Corporate Drive, Suite 350 | | Troy | MI | 48098 | |

### FILE RECORD

**RECORD DATA** ( UNIQUE SEQUENTIAL ID: 0001 )

| FILING TYPE | | | | |
|---|---|---|---|---|
| Initial | | | | |
| FILERS UNIQUE ID | | ALTERNATE NAME DESIGNATION | | ALTERNATE FILING TYPE |
| | | Debtor-Secured Party | | UCC |
| ADDITIONAL INFORMATION | | | | MATURITY DATE |

**DEBTOR DATA**       (UNIQUE SEQUENTIAL ID: 001 )

| 1a. ORGANIZATION NAME | | | | | |
|---|---|---|---|---|---|
| Iddings Trucking, Inc. | | | | | |
| 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | | 2g. ORGANIZATIONAL ID#, if any | | |
| Corporation | Ohio | | 351327 | | |
| 1c. MAILING ADDRESS | | | CITY | STATE | POSTAL CODE |
| 741 Blue Knob Road | | | Marietta | OH | 45750 |
| COUNTRY | ALTERNATIVE CAPACITY OF DEBTOR | | | | |
| USA | | | | | |

**SECURED PARTY DATA**     (UNIQUE SEQUENTIAL ID: 001 )

| 3a. ORGANIZATION NAME | | | | | |
|---|---|---|---|---|---|
| Crestmark TPG LLC | | | | | |
| 3c. MAILING ADDRESS | | CITY | STATE | POSTAL CODE | COUNTRY |
| 30 Burton Hills Blvd., Suite 576 | | Nashville | TN | 37215 | USA |

**Doc ID -->**    200835800524

4. This FINANCING STATEMENT covers the following collateral:

All assets of the Debtor now owned or hereafter acquired and wherever located.

## UNCONDITIONAL CONTINUING GUARANTY

BORROWER:  Iddings Trucking, Inc.

### INDIVIDUAL GUARANTOR(S)

Printed Name (1) GEORGE C. LOEBER

Signature _George Loeber_

Street Address: 4350 ST. RT. 26

City, State  MARIETTA, OH 45750

(2)  THOMAS J. HALL

_Thomas E. Hall_

4255 ST. RT. 26

MARIETTA, OH 45750

### ENTITY GUARANTOR(S)

Printed Name (1) _George Loeber_

Signature: By: _George Loeber_

Title: Its: _Pres_

Street Address: _741 Blue Knob Rd_

City, State: _Marietta, Ohio 45750_

(2) _Thomas E. Hall_

_Thomas E. Hall_

Its: _Vice President_

_741 Blue Knob Rd._

_Marietta, Ohio 45750_

State of Ohio )        County of Washington )

On 2/1/13 , 200_, before me, the undersigned, a Notary Public in and for said State, personally appeared each of the above-named persons, who are personally known to me (or proved to me on the basis of satisfactory evidence) to be the persons whose names are subscribed to the within guaranty and each of them acknowledged to me that he or she executed the same in his/her individual capacity or authorized capacity, as the case may be, and that by his/her signature on the guaranty, the persons, or the entity upon behalf of which the persons acted, executed the instrument.

WITNESS my hand and official seal.        ROBERT R SCHILL, Notary Signature _Robert R Schill_ (Seal)
In and For The State of Ohio
My Commission Expires November 2, 2010

To induce Crestmark TPG LLC ("Crestmark") to loan against accounts from above named Borrower,  the above signed guarantors, (whether one or more, "Guarantor") hereby unconditionally and irrevocably represents, warrants, and undertakes to Crestmark as follows:

**Promise to Pay and Perform.**  Guarantor absolutely, unconditionally and irrevocably, jointly and severally, guarantees to Crestmark the prompt payment and performance of all obligations of Borrower (or any successor-in-interest of Borrower) of every kind and character now or hereafter owed to Crestmark (the "Guaranteed Obligations").

**Guaranteed Obligations.**  Guarantor acknowledges and agrees that, without notice to Guarantor and without affecting or impairing the obligations of Guarantor hereunder, Borrower at any time by action or inaction, (a) may compromise or settle, extend the period of duration or the time for the payment, or discharge the performance of, or may refuse to, or otherwise not enforce the Guaranteed Obligations; (b) may, release all or any one or more parties obligated with respect to, the Guaranteed Obligations or any security or guaranty therefor or may grant other indulgences to Borrower in respect thereof; (c) may waive, amend or modify in any manner any one or more of the Guaranteed Obligations or any security or guaranty therefor; (d) may release or substitute any guarantor, if any, of the Guaranteed Obligations; and/or (e) may enforce, exchange, release, or waive any security for the Guaranteed Obligations or any guaranty of the Guaranteed Obligations, or any portion thereof.

**Waivers by Guarantor.**  Guarantor waives, to the fullest extent permitted by law,  all suretyship or equitable defenses to payment under this guaranty. Without limiting the generality of the foregoing or the provisions above, Guarantor agrees that Crestmark may, from time to time, without notice or demand and without affecting the enforceability of this Guarantee or Borrower's liability thereunder: (a) fail to perfect or maintain the perfection of, subordinate, exchange, substitute and/or transfer any security or guaranty; and/or  (b) do or omit to do any other act or thing, or engage in any delay or circumstance with any person which might, but for the terms herein, constitute a  discharge of Guarantor's obligations under this Guaranty.  Without in any way limiting any other provision of this Guaranty, Guarantor's obligations under this Guaranty shall not be released, limited, impaired or otherwise affected by the lack of validity or enforceability of all or any part of any Guaranteed Obligations or any other agreement or instrument, any loss of value of any security held by Borrower, any defense, counterclaim or right of setoff available to Borrower or any other person, or any other circumstance whether similar to or dissimilar from the foregoing which might otherwise constitute a defense available to, or a discharge of the Guarantor in respect of its obligations under this Guaranty.  Crestmark may proceed in the enforcement of the Guarantor's obligations under this Guaranty independently of any other right or remedy that Crestmark may at any time hold or any security therefor, and Crestmark may proceed against the Guarantor without (a) proceeding against Borrower, any other guarantor or any other person, (b) proceeding against or exhausting any security Crestmark may hold and/or (c) pursuing any other remedy Crestmark may have whatsoever.   Crestmark shall have no obligation to purchase or to continue to purchase any accounts from Borrower. The purchase by Crestmark of any single account from Borrower after the date of execution of this Guaranty shall provide full and sufficient consideration for the execution of this Guaranty, and the Guaranty shall thereafter apply to all present and future Guaranteed Obligations.

**Incorporated Provisions.**  The provision of the applicable Client Agreement between Crestmark and Borrower in the sections entitled Amendment, Severability, Attorney's Fees, Entire Agreement, Choice of Law, Jury Trial Waiver, and Legal Action apply also to this Guaranty and the Guarantor as if those provisions were set forth in full herein, which agreement Guarantor acknowledges it has read in its entirety.

11874

**Form 668 (Y)(c)**
(Rev. February 2004)

Department of the Treasury - Internal Revenue Service

## Notice of Federal Tax Lien

| Area: SMALL BUSINESS/SELF EMPLOYED AREA #2<br>Lien Unit Phone: (800) 913-6050 | Serial Number<br>241267116 | For Optional Use by Recording Office |
|---|---|---|

As provided by section 6321, 6322, and 6323 of the Internal Revenue Code, we are giving a notice that taxes (including interest and penalties) have been assessed against the following-named taxpayer. We have made a demand for payment of this liability, but it remains unpaid. Therefore, there is a lien in favor of the United States on all property and rights to property belonging to this taxpayer for the amount of these taxes, and additional penalties, interest, and costs that may accrue.

201600007783 ✓
Filed for Record in
WASHINGTON COUNTY, OHIO
TRACEY WRIGHT, RECORDER
12-16-2016 At 12:05 pm.
FTL          5.00
OR Volume    606 Page 1326 - 1326

Name of Taxpayer IDDINGS TRUCKING INC, a Corporation

Residence       741 BLUE KNOB RD
                MARIETTA, OH 45750-8275

**IMPORTANT RELEASE INFORMATION:** For each assessment listed below, unless notice of the lien is refiled by the date given in column (e), this notice shall, on the day following such date, operate as a certificate of release as defined in IRC 6325(a).

| Kind of Tax<br>(a) | Tax Period Ending<br>(b) | Identifying Number<br>(c) | Date of Assessment<br>(d) | Last Day for Refiling<br>(e) | Unpaid Balance of Assessment<br>(f) |
|---|---|---|---|---|---|
| 1120 | 12/31/2013 | XX-XXX5619 | 06/13/2016 | 07/13/2026 | 20625.79 |
| 2290 | 07/01/2013 | XX-XXX5619 | 04/21/2014 | 05/21/2024 | |
| 2290 | 07/01/2013 | XX-XXX5619 | 07/14/2014 | 08/13/2024 | 10883.86 |
| 2290 | 07/01/2013 | XX-XXX5619 | 06/20/2016 | 07/20/2026 | 8270.38 |
| 2290 | 07/01/2016 | XX-XXX5619 | 09/19/2016 | 10/19/2026 | 22155.73 |
| 940 | 12/31/2013 | XX-XXX5619 | 11/03/2014 | 12/03/2024 | 717.15 |
| 940 | 12/31/2014 | XX-XXX5619 | 05/18/2015 | 06/17/2025 | 1748.20 |
| 941 | 06/30/2013 | XX-XXX5619 | 10/14/2013 | 11/13/2023 | 4307.20 |
| 941 | 03/31/2014 | XX-XXX5619 | 06/30/2014 | 07/30/2024 | 2109.18 |
| 941 | 09/30/2014 | XX-XXX5619 | 12/08/2014 | 01/07/2025 | 2493.93 |
| 941 | 12/31/2014 | XX-XXX5619 | 04/06/2015 | 05/06/2025 | 26659.04 |
| 941 | 03/31/2015 | XX-XXX5619 | 06/29/2015 | 07/29/2025 | 43159.05 |
| 941 | 06/30/2015 | XX-XXX5619 | 09/28/2015 | 10/28/2025 | 62769.83 |
| 941 | 09/30/2015 | XX-XXX5619 | 12/21/2015 | 01/20/2026 | 52831.31 |
| 941 | 12/31/2015 | XX-XXX5619 | 04/04/2016 | 05/04/2026 | 109996.20 |

Place of Filing

COUNTY RECORDER
WASHINGTON COUNTY
MARIETTA, OH 45750

Total | $ | 368726.85

This notice was prepared and signed at ____DETROIT, MI____ , on this,

the __09th__ day of __December__ , __2016__ .

201600007783
INTERNAL REVENUE SERVICE
SEE FILE
PO BOX 145595
CINCINNATI OH 45250-9734

| Signature<br>*Cheryl Cordero*<br>for JOHN P MARKER | Title<br>REVENUE OFFICER<br>(412) 666-5508 | 22-11-4136 |
|---|---|---|

**(NOTE:** Certificate of officer authorized by law to take acknowledgment is not essential to the validity of Notice of Federal Tax lien
Rev. Rul. 71-466, 1971 - 2 C.B. 409)

Part 1 - Kept By Recording Office

Form 668(Y)(c) (Rev. 2-2004)
CAT. NO 60025X

EHXIBIT B

Instrument
201600004222 OR

Volume Page
599 2604

11874

**Form 668 (Y)(c)**
(Rev. February 2004)

Department of the Treasury - Internal Revenue Service

## Notice of Federal Tax Lien

| Area:<br>SMALL BUSINESS/SELF EMPLOYED AREA #2<br>Lien Unit Phone: (800) 913-6050 | Serial Number<br><br>220361816 | For Optional Use by Recording Office |
|---|---|---|

As provided by section 6321, 6322, and 6323 of the Internal Revenue Code, we are giving a notice that taxes (including interest and penalties) have been assessed against the following-named taxpayer. We have made a demand for payment of this liability, but it remains unpaid. Therefore, there is a lien in favor of the United States on all property and rights to property belonging to this taxpayer for the amount of these taxes, and additional penalties, interest, and costs that may accrue.

201600004222
Filed for Record in
WASHINGTON COUNTY, OHIO
TRACEY WRIGHT, RECORDER
07-15-2016 At 11:54 am.
FTL            5.00
OR Volume    599 Page 2604 - 2604

Name of Taxpayer IDDINGS TRUCKING INC, a Corporation

Residence     741 BLUE KNOB RD
              MARIETTA, OH 45750-8275

**IMPORTANT RELEASE INFORMATION:** For each assessment listed below, unless notice of the lien is refiled by the date given in column (e), this notice shall, on the day following such date, operate as a certificate of release as defined in IRC 6325(a).

| Kind of Tax<br>(a) | Tax Period<br>Ending<br>(b) | Identifying Number<br>(c) | Date of<br>Assessment<br>(d) | Last Day for<br>Refiling<br>(e) | Unpaid Balance<br>of Assessment<br>(f) |
|---|---|---|---|---|---|
| 1120 | 12/31/2013 | XX-XXX5619 | 06/13/2016 | 07/13/2026 | 27125.79 |
| 2290 | 07/01/2012 | XX-XXX5619 | 03/04/2013 | 04/03/2023 | 9614.80 |
| 940 | 12/31/2013 | XX-XXX5619 | 11/03/2014 | 12/03/2024 | 717.15 |
| 940 | 12/31/2014 | XX-XXX5619 | 05/18/2015 | 06/17/2025 | 1748.20 |
| 941 | 12/31/2012 | XX-XXX5619 | 03/04/2013 | 04/03/2023 | 1399.24 |
| 941 | 03/31/2013 | XX-XXX5619 | 07/08/2013 | 08/07/2023 | 286.86 |
| 941 | 06/30/2013 | XX-XXX5619 | 10/14/2013 | 11/13/2023 | 8990.51 |
| 941 | 03/31/2014 | XX-XXX5619 | 06/30/2014 | 07/30/2024 | 2109.18 |
| 941 | 09/30/2014 | XX-XXX5619 | 12/08/2014 | 01/07/2025 | 2493.93 |
| 941 | 12/31/2014 | XX-XXX5619 | 04/06/2015 | 05/06/2025 | 26659.04 |
| 941 | 03/31/2015 | XX-XXX5619 | 06/29/2015 | 07/29/2025 | 43159.05 |
| 941 | 06/30/2015 | XX-XXX5619 | 09/28/2015 | 10/28/2025 | 62769.83 |
| 941 | 09/30/2015 | XX-XXX5619 | 12/21/2015 | 01/20/2026 | 52831.31 |
| 941 | 12/31/2015 | XX-XXX5619 | 04/04/2016 | 05/04/2026 | 110496.20 |

| Place of Filing<br><br>COUNTY RECORDER<br>WASHINGTON COUNTY<br>MARIETTA, OH 45750 | Total | $ | 350401.09 |
|---|---|---|---|

This notice was prepared and signed at _____ DETROIT, MI _____, on this,

201600004222
INTERNAL REVENUE SERVICE
SEE FILE
PO BOX 145595
CINCINNATI OH 45250-9734

the _08th_ day of _July_, _2016_.

| Signature<br><br>*Cheryl Cordero*<br>for JOHN P MARKER | Title<br>REVENUE OFFICER<br>(412) 666-5508 | 22-11-4136 |
|---|---|---|

**(NOTE:** Certificate of officer authorized by law to take acknowledgment is not essential to the validity of Notice of Federal Tax lien
Rev. Rul. 71-466, 1971 - 2 C.B. 409)

Part 1 - Kept By Recording Office

Form 668(Y)(c) (Rev. 2-2004)
CAT. NO 60025X

Instrument  Volume Page
201600004223 OR   599 2605

11874

**Form 668 (Y)(c)**
(Rev. February 2004)

Department of the Treasury - Internal Revenue Service

# Notice of Federal Tax Lien

| Area: | Serial Number | For Optional Use by Recording Office |
|---|---|---|
| SMALL BUSINESS/SELF EMPLOYED AREA #2 | | |
| Lien Unit Phone: (800) 913-6050 | 220361916 | |

As provided by section 6321, 6322, and 6323 of the Internal Revenue Code, we are giving a notice that taxes (including interest and penalties) have been assessed against the following-named taxpayer. We have made a demand for payment of this liability, but it remains unpaid. Therefore, there is a lien in favor of the United States on all property and rights to property belonging to this taxpayer for the amount of these taxes, and additional penalties, interest, and costs that may accrue.

201600004223
Filed for Record in
WASHINGTON COUNTY, OHIO
TRACEY WRIGHT, RECORDER
07-15-2016 At 11:54 am.
FTL        5.00
OR Volume    599 Page 2605 - 2605

Name of Taxpayer IDDINGS TRUCKING INC, a Corporation

| Residence | 741 BLUE KNOB RD |
|---|---|
| | MARIETTA, OH 45750-8275 |

**IMPORTANT RELEASE INFORMATION:** For each assessment listed below, unless notice of the lien is refiled by the date given in column (e), this notice shall, on the day following such date, operate as a certificate of release as defined in IRC 6325(a).

| Kind of Tax (a) | Tax Period Ending (b) | Identifying Number (c) | Date of Assessment (d) | Last Day for Refiling (e) | Unpaid Balance of Assessment (f) |
|---|---|---|---|---|---|
| 2290 | 07/01/2013 | XX-XXX5619 | 04/21/2014 | 05/21/2024 | |
| 2290 | 07/01/2013 | XX-XXX5619 | 07/14/2014 | 08/13/2024 | 10913.66 |
| 2290 | 07/31/2015 | XX-XXX5619 | 06/20/2016 | 07/20/2026 | 8270.38 |

201600004223
INTERNAL REVENUE SERVICE
SEE FILE
PO BOX 145595
CINCINNATI OH 45250-9734

| Place of Filing | | |
|---|---|---|
| COUNTY RECORDER | | |
| WASHINGTON COUNTY | Total | $  19184.04 |
| MARIETTA, OH 45750 | | |

This notice was prepared and signed at _____DETROIT, MI_____ , on this,

the __08th__ day of __July__ , __2016__.

| Signature | Title |
|---|---|
| Cheryl Cordew | REVENUE OFFICER          22-11-4136 |
| for JOHN P MARKER | (412) 666-5508 |

**(NOTE:** Certificate of officer authorized by law to take acknowledgment is not essential to the validity of Notice of Federal Tax lien
Rev. Rul. 71-466, 1971 - 2 C.B. 409)

Part 1 - Kept By Recording Office

Form **668(Y)(c)** (Rev. 2-2004)
CAT. NO 60025X